UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AL LONG FORD, INC., d/b/a AL LONG
FORD,

    Plaintiff,

v.                 Case No. 10-CV-13084
                  Honorable Denise Page Hood

UNIVERSAL UNDERWRITERS GROUP d/b/a
UNIVERSAL UNDERWRITERS SERVICE
CORP.,

    Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

This matter involves insurance indemnification. Now before the Court is Defendant's Motion for Summary Judgment, filed August 16, 2012. For the reasons stated below, Defendant's Motion for Summary Judgment is GRANTED.

**I. STATEMENT OF FACTS**

Plaintiff Al Long Ford (ALF) is a former auto dealership, doing business in Wayne County, Michigan, that was organized under the laws of Delaware.[1] ALF purchased an insurance policy from Zurich Direct Underwriters and Universal Underwriters Group (Zurich)[2] for the period of August 1, 2005 until August 1, 2006. On July 23, 2003, ALF executed an agreement with Aimbridge Indirect Lending, LLC (Aimbridge), which was to serve as a middleman between ALF and Michigan First Credit Union. Aimbridge in turn had an agreement with Michigan First to

---

[1] According to the Michigan Department of Licensing and Regulatory Affairs, ALF became "void" on March 1, 2010.

[2] The parties agreed to substitute Universal Underwriters Insurance Company as the proper defendant.

"facilitate access by credit unions to automobile dealerships." ALF sent credit applications to Aimbridge and Aimbridge would transmit those applications to participating credit unions such as Michigan First.[3] ALF agreed to indemnify Michigan First and Aimbridge for any defaulted loans.

On February 23, 2009, Michigan First filed a suit against ALF and six other auto dealerships. Michigan First brought four claims: (1) breach of contract, (2) breach of warranty, (3) fraud/misrepresentation, and (4) insurance reimbursement. On April 20, 2006, the Honorable Robert Ziolkowski ordered that venue for ALF transfered to Macomb County Circuit Court. Zurich agreed to assume ALF's defense for three of the four counts under the "Customer Complaint Defense" provision of the Insurance policy, which was subject to a limit of $25,000. On March 30, 2006, Zurich informed ALF that it would transfer ALF's representation to Eric Bowden of Colombo & Colombo.[4] Michigan First re-filed its Complaint in Macomb County Circuit Court on June 14, 2006.

Zurich contends that during litigation it became aware that Michigan First was not an ALF customer. On January 9, 2007, Zurich informed ALF it would no longer be able to assume its defense because Michigan First was not a customer. ALF alleges it maintained representation with Colombo & Colombo in order to "avoid a disruption in its defense." On or about August 27, 2007, Eric Bowden of Colombo & Colombo filed a motion to withdraw as counsel for ALF. Mr. Bowden noted that ALF had retained separate counsel and Mr. Bowden, and ALF and separate counsel disagreed on trial tactics and strategy causing a breakdown in the attorney-client relationship. The Honorable Mark S. Switalski granted the Motion to Withdraw. Ronald Acho filed an appearance on or about September 4, 2007.

---

[3] Zurich alleges that Aimbridge purchased consumer loans from ALF. ALF disputes this. Rather, it appears that Michigan First purchased the consumer loans from ALF.

[4] Zurich contends that Mr. Bowden has extensive experience in defending auto dealerships and is well-known in the Detroit legal community.

On October 21, 2008, a jury found ALF liable on breach of contract and fraud and awarded Michigan First damages in the amount of $360,776.13.[5] ALF appealed and the Michigan Court of Appeals, in an unpublished decision, affirmed the decision. *Michigan First Credit Union v. Al Long Ford, Inc.*, Case No. 291146, 2010 Mich. App. LEXIS 2394, 2010 WL 5129890 (Mich. Ct. App. Dec. 16, 2010).

ALF filed the present suit against Zurich in Wayne County Circuit Court on or about July 7, 2010.  ALF made the following allegations: (1) failure to defend – breach of contract; (2) failure to indemnify – breach of contract; and (3) breach of fiduciary duty. ALF alleges that Zurich acted in bad faith by failing to provide defense and indemnification.  Zurich removed the action to this Court on August 4, 2010. Zurich filed this motion for summary judgment on August 16, 2012.

## II.     STANDARD OF REVIEW

Defendant brings this motion pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56. A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. The Court will accept all the factual allegations as true and review the complaint in the light most favorable to the plaintiff. *Eidson v. Tennessee Dep't of Children's Servs*, 510 F.3d 631, 634 (6th Cir. 2007). To survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A motion to dismiss is appropriate when the plaintiff is unable to prove any set of facts to support his claim that he is entitled to relief. *Varljen v. Cleveland Gear Co., Inc.*, 250 F.3d 426, 429 (6th Cir. 2001). The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful. *Bell Atlantic*, 550 U.S. at 556. Claims

---

[5] Statutory interest was an additional $54,673.92 for a total award of $415,450.05.

comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Furthermore, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendants is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the burden of proving that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must consider all evidence in the light most favorable to the nonmoving party. *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). Summary judgment will "be granted against a party, who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 391. A material fact is genuine, and the case is not appropriate for summary judgment, if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 248 (1986).

## III. ANALYSIS

### A. Capacity to Sue

Zurich argues that ALF no longer has the capacity to sue because, as a foreign corporation that has failed to pay its annual filing fee or file its annual report, it has dissolved under Michigan law. ALF does not contest that it is a Delaware corporation or that it has failed to file its annual report or pay its annual filing fee. Rather, ALF contends that it has capacity to sue under MICH. COMP. LAW §§ 450.1833[6] and 450.1834.[7]

---

[6] Section 1833 provides:
Except as a court may otherwise direct, a dissolved corporation shall continue its

However, neither section 1833 nor section 1834 support ALF's argument. Section 1833 and 1834 govern the matters that a dissolved corporation may conduct in order to wind up its affairs. The sections ALF relies on apply to a corporation formed under the laws of Michigan. *See* MICH. COMP. LAWS §§ 450.1106(1), 450.1833, 450.1834. A foreign corporation is defined separately under the Act. *See* MICH. COMP. LAWS § 450.1107(1) and (2); Fed. R. Civ. P. 17(b)(2) ("for a corporation, [the capacity to sue is determined] by the law under which it was organized . . ."). ALF filed this action after it became void under Michigan law. ALF has not provided anything to show

---

corporate existence but shall not carry on business except for the purpose of winding up its affairs by:
(a)  Collecting its assets.
(b)  Selling or otherwise transferring, with or without security, assets which are not to be distributed in kind to its shareholders.
(c)  Paying its debts and other liabilities.
(d)  Doing all other acts incident to liquidation of its business and affairs

MICH. COMP. LAWS § 450.1833

[7] Section 1834 provides:
Subject to section 833 and except as otherwise provided by court order, a dissolved corporation, its officers, directors and shareholders shall continue to function in the same manner as if dissolution had not occurred. Without limiting the generality of this section:
(a)  The directors of the corporation are not deemed to be trustees of its assets and shall be held to no greater standard of conduct than that prescribed by section 541a.
(b)  Title to the corporation's assets remains in the corporation until transferred by it in the corporate name.
(c)  The dissolution does not change quorum or voting requirements for the board or shareholders, and does not alter provisions regarding election, appointment, resignation or removal of, or filling vacancies among, directors or officers, or provisions regarding amendment or repeal of bylaws or adoption of new bylaws.
(d)  Shares may be transferred.
(e)  The corporation may sue and be sued in its corporate name and process may issue by and against the corporation in the same manner as if dissolution had not occurred.
(f)  An action brought against the corporation before its dissolution does not abate because of the dissolution.

MICH. COMP. LAWS § 450.1834

that its filing deficiency has been cured. *See Cyborowski v. Ennest*, No. 08-13736-BC, 2009 U.S. Dist. LEXIS 50325, *11-12, 2009 WL 1658181 (E.D. Mich. June 11, 2009) (citing *George Morris Cruises v. Irwin Yacht & Marine Corp.*, 191 Mich. App. 409 (1991)) ("A corporation that is dissolved at the time of filing a complaint but rectifies its deficiencies during the course of the litigation also reinstates its legal capacity to pursue its rights."). ALF has not supported its argument that it, as a dissolved corporation formed under the laws of Delaware, has capacity to sue in Michigan as a corporate entity. The Court finds that ALF does not have capacity to sue under Michigan law.

### B. Coverage

Even if ALF had capacity to sue as a corporation under Michigan law, it is not entitled to coverage under the policy. When interpreting an insurance contract, Michigan courts first look to the parties' agreement to try to effectuate their intent. *Auto-Owners Ins. Co. v. Churchman*, 440 Mich. 560, 566 (1992). "Any clause in an insurance policy is valid as long as it is clear, unambiguous and not in contravention of public policy." *Raska v. Farm Bureau Mut. Ins. Co.*, 412 Mich. 355, 361-362 (1982). Any ambiguity in the contract is construed against the insurer. *Heniser v. Frankenmuth Mut. Ins.*, 449 Mich. 155, 160 (1995). The Court must interpret an insurance policy by its plain meaning. *Id.* at 161. "[T]he burden of proof lies with the insured to show that the policy covered the damage suffered." *Solomon v. Royal Maccabees Life Ins. Co.*, 243 Mich. App. 375, 379, 622 N.W.2d 101, (2000).

The duty to defend in an insurance contract "arises only with respect to insurance afforded by the policy. If the policy does not apply, there is no duty to defend." *American Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 452 Mich. 440, 450, 550 N.W.2d 475 (1996). The duty to defend is

broader than the duty to indemnify and the insurer must defend if "the allegations of a third party against the policyholder even arguably come within the policy coverage." *Id.* Whether the suit is meritorious is irrelevant. *Protective Nat'l Ins. Co. v. Woodhaven*, 438 Mich. 154, 159, 476 N.W.2d 374 (1991) (quoting *Detroit Edison Co. v. Michigan Mutual Ins. Co.*, 102 Mich. App. 136, 141-42, 301 N.W.2d 832 (1980)). The insurer must look beyond the pleadings and determine whether coverage is possible and any doubt must be resolved against the insurer. *Id.*

Zurich argues that the Court should dismiss the Complaint because the Policy did not provide coverage for defense or indemnification in the action between Michigan First and ALF. ALF claims that it has coverage for defense and indemnification under the "Customer Complaint Defense" portion of the Policy.[8]

> The portion of the policy entitled "Garage Unicover Coverage Part 500" provides:
>
> WE will pay all defense costs actually incurred to defendant any SUIT asking for CUSTOMER COMPLAINT DEFENSE and EMPLOYMENT RELATED DEFENSE when such insurance is included in the declarations.
>      . . .
>
> "CUSTOMER COMPLAINT DEFENSE" means any SUIT filed against YOU during the Coverage Part period by or on behalf of a customer arising out of the sale, lease, rental, service or repair of YOUR PRODUCT, other than as a direct result of an OCCURRENCE or as defined in STATUTE AND TITLE E&O.
>      . . .
>
> "GARAGE OPERATIONS" means the ownership, maintenance or use of that portion of any premises where YOU conduct YOUR AUTO business and all other operations necessary or incidental thereto.
>
> "INJURY" means, with respect to:

---

[8] In its initial Motion for Summary Judgment, Zurich makes several arguments for no coverage under various provisions of the policy. However, ALF appears to concede these arguments because it does not address these arguments in its response.

Group 1—bodily injury, sickness, disease or disability (including death resulting from any of these) or damage to or loss of use of tangible property;

Group 2—mental anguish, mental injury, fright, shock or humiliation, except when arising from DISCRIMINATION;

Group 3—false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution, abuse of process, libel, slander, defamation of character, private nuisance (except pollution), invasion of rights of privacy or possession of personal property;

Group 4—plagiarism, misappropriation of advertising ideas or style, infringement of copyright, title, slogan or trademark;

Group 5—any error or omission in the ADMINISTRATION of YOUR profit sharing, pension or employee stock subscription plans or YOUR group life, group hospitalization or major medical, group accident and health, Worker's Compensation, unemployment, social security or disability benefits insurance;

Group 6—DISCRIMINATION.

. . .

"OCCURRENCE", with respect to COVERED POLLUTION DAMAGES, INJURY Groups 1 and 2 means an accident, including continuous or repeated exposure to conditions, which results in such INJURY or COVERED POLLUTION DAMAGES during the Coverage Part period neither intended nor expected from the standpoint of a reasonably prudent person.

. . .

"PRODUCT" means the goods or products YOU make, sell, service, or repair in GARAGE OPERATIONS.

. . .

WHO IS AN INSURED – With respect to GARAGE OPERATIONS (other than AUTO HAZARD), CUSTOMER COMPLAINT DEFENSE or STATUTE AND TITLE E&O:

    (1)    YOU;

    (2)    YOUR spouse, if YOU are a sole proprietorship;

    (3)    Any of YOUR partners and their spouses, paid employees, directors, executive officers, stockholders, while acting within the scope of their duties as such.

. . .

EXCLUSIONS – This insurance does not apply to:

(a) INJURY, EMPLOYMENT RELATED DEFENSE, COVERED POLLUTION DAMAGES, CUSTOMER COMPLAINT DEFENSE or STATUTE AND TITLE E&O, if caused by any dishonest, fraudulent or criminal acts committed by any INSURED;

(b) Any act committed by or at the direction of the INSURED with intent to cause harm. This exclusion does not apply if INJURY arises solely from the intentional use of reasonable force for the purpose of protecting persons or property;

(c) INJURY as defined in Group 1 and 2 to any employees of the insured arising out of and in the course of their employment by or on behalf of the INSURED:

    (1) for which the INSURED may be held liable as an employer or in any other capacity;

    (2) any obligation of the INSURED to indemnify or contribute with another because of such INJURY;

    (3) to any INJURY sustained by any relative of the employee as a consequence of the INJURY to such employee.

[Policy, Docket No. 31, Pg ID 366-70].

First, ALF argues that "paid employees" are excluded from the insured covered under the policy. However, the Court reads that "paid employees" *are* included as an insured under the Insurance Policy. [Policy, Docket No. 32, Pg ID 369; Docket No. 34, Pg ID 634]. The exclusion provision clearly states that "any dishonest, fraudulent or criminal acts committed by any INSURED" are not covered under the policy. [Policy, Docket No. 32, Pg ID 369]. Therefore, a suit based on the fraudulent acts of an employee would not be entitled to defense or indemnification.

Even if paid employees were not included within the definition of the insured, the underlying suit is against ALF and not a paid employee. *See Detroit Edison v. Mich. Mut. Ins. Co.*, 102 Mich.

App. 136, 141-142, 301 N.W.2d 832 (1980) ("The duty of the insurer to defend the insured depends upon the allegations in the complaint of the third party in his or her action against the insured."). Michigan First alleged that ALF engaged in fraudulent acts. The jury found that Michigan First's allegations were meritorious and found in their favor, a decision that the Michigan Court of Appeals subsequently affirmed. ALF is not entitled to coverage because the fraudulent acts of ALF as an entity fall under the exclusion.

Next, ALF asserts that Michigan First was its customer. ALF contends that Michigan First made loans to the ALF's customers and paid ALF for those loans. It notes that Aimbridge was merely an agent of Michigan First that processed the loans. The insurance application promises to defend suit that arises "out of the sale, lease, rental, service or repair of YOUR PRODUCT." Product is defined as the "goods or products [ALF] make[s], sell[s], service[s], or repair[s] in GARAGE OPERATIONS." The Garage operations are those matters involved in the carrying on of the auto sales business. The selling of commercial paper to Michigan First has nothing to do with ALF's product, which is the making, selling, servicing, or selling of automobiles. It is the purchaser of the automobile that enters into an agreement and pays Michigan First and Michigan First pays those funds to ALF on behalf of the purchaser. Michigan First has not bought anything from ALF and is not a customer under the insurance policy. ALF is not entitled to coverage under the CUSTOMER CLAIMS provision of the Policy.

ALF further argues that it is entitled to $25,000 indemnification as to each of the 48 claims against it. Even if ALF were covered under the insurance contract, which it does not appear that it is, it would not be entitled to indemnification as to every claim against it. ALF cites no portion of the Policy that would entitle it to such relief. Rule 56(c)(1) requires the parties to support their

10

factual arguments either by citation to the record or by showing that matters cited do or do not raise a genuine issue of material fact or that the "adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The Court is only allowed to consider materials cited from the record, but may go beyond materials cited and consider other parts of the record. Fed. R. Civ. P. 56(c)(2). ALF has not cited any portions of the Policy to support its position that it is entitled to indemnification as to each claim against ALF.

ALF next asserts that it is entitled to coverage under the "Umbrella Part 980" portion of the policy, which pays for loss due to an occurrence. [Policy, Docket No. 32, Pg ID 405]. ALF only supports this argument with its own conclusions. ALF further asserts that it should be covered because Michigan First is a customer. However, as stated above, Michigan First has not purchased anything from ALF and cannot be conceivably deemed a customer for the purposes of coverage. The Court finds hat ALF is not entitled to coverage under the Policy.

### C. Fiduciary Duty

ALF asserts that Zurich had a duty to settle the claim within policy limits. *See Wakefield v. Globe Indem. Co.*, 246 Mich. 645, 648, 225 N.W. 643 (1929) ("the insurer is liable to the insured for an excess of judgment over the face of the policy when the insurer, having exclusive control of settlement, fraudulently or in bad faith refuses to compromise a claim for an amount within the policy limit.") However, a fiduciary duty to settle cannot exist absent coverage. *See Detroit Edison*, 102 Mich. App. At 145. ALF has not met its first burden of showing that it is entitled to coverage under the Policy. Necessarily, it cannot claim that Zurich has a duty to settle on its behalf. The Court dismisses ALF's claim for breach of fiduciary duty.

### V. CONCLUSION

IT IS ORDERED that Defendant's Motion for Summary Judgment [Docket No. 31, filed August 16, 2012] is GRANTED.

IT IS SO ORDERED.

                    S/Denise Page Hood
                    Denise Page Hood
                    United States District Judge

Dated: March 29, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 29, 2013, by electronic and/or ordinary mail.

                    S/LaShawn R. Saulsberry
                    Case Manager